# IN THE COURT OF APPEALS OF IOWA

No. 24-1442
Filed November 13, 2024

**IN THE INTEREST OF L.A. and O.A.,**
**Minor Children,**

**S.A., Mother,**
Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, Judge.


A mother appeals the termination of her parental rights to her two daughters. **AFFIRMED.**


Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Donna M. Schauer of Schauer Law Office, Adel, attorney and guardian ad litem for minor children.


Considered by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

A four-year-old girl wandered out of her home three times without her mother noticing—once she was found four blocks away at a police station, another time in a nearby Dollar General store, and yet another time under the covers in a neighbor's home. The girl and her older sister were removed from their mother's custody and adjudicated in need of assistance. During the juvenile proceeding, the mother had two more children, did not regularly visit the girls, and struggled to remain sober. After more than a year elapsed without progress, the State petitioned to terminate the mother's parental rights to the daughters. The juvenile court agreed, terminating the mother's parental rights under Iowa Code section 232.116(1)(f) (2024).

Despite not testifying at the hearing, not contesting any evidence about the daughters through counsel, and taking "no formal position" on termination during the hearing, the mother now appeals. She challenges only whether the State proved the girls could not be returned to the mother's custody at the time of the termination hearing as required under the statutory ground for termination relied on by the juvenile court. Assuming without deciding that the mother's passivity during the hearing does not foreclose appellate review, we affirm termination. The State proved by clear and convincing evidence the girls could not be returned to the mother's custody at the time of the termination hearing. Indeed, in nearly a year and a half, the mother never completed substance-use treatment and tested positive for methamphetamine a month before the hearing. And her neglect and substance use has caused difficulties for the girls—requiring reliable care and support that the mother is unable to provide. We thus affirm the juvenile court.

I.

The mother has five children—two daughters and three sons. This appeal concerns the two daughters, born in 2016 and 2018.[1]

The mother first became involved with the department of health and human services ("HHS") after the younger daughter was born in 2018—she tested positive for marijuana at birth. The mother later admitted using cocaine, and HHS imposed a safety plan. The mother then completed substance-abuse treatment and kept custody of the girls.

But the mother struggled to supervise her children, resulting in several instances of neglect. Once, she left her middle son (then one year old) in daycare and did not come pick him up. When the daycare contacted her, she said she was out of town and could not come get him. Yet law enforcement observed her arrive back at her apartment later that evening with friends and shopping bags. Three times, the younger daughter (then four years old) left the home without the mother noticing. One time, she wandered four blocks away to the local police station. Another time, she escaped the home and was found at a nearby Dollar General store alone. Yet another time, she was discovered over an hour later hiding under the covers in a neighbor's home.

Based on these events, HHS issued a founded child-abuse assessment and the State petitioned to adjudicate the daughters as children in need of assistance.

---

[1] None of the sons—all of whom are younger than the daughters—currently live with their mother. The oldest son lives in another state with his father. The juvenile court terminated her rights to the middle son in this same proceeding, but she does not appeal that termination. And the newborn son was adjudicated in need of assistance—also in the same order—after being removed from her custody.

The girls were removed from their mother's custody and placed with their maternal grandmother in March 2023, and they were adjudicated in need of assistance two months later.

After removal, the mother's visits with the girls were infrequent and did not go well. The grandparents reported the mother did not engage with the girls or help with mealtime or bedtime. Instead, the mother usually spent the visits on her phone. And when she did engage, she would often yell or swear at the girls or the grandparents, which upset the daughters, especially the younger daughter.

Indeed, the younger daughter's behavior would worsen or intensify after visits with the mother. Eventually, the younger daughter's therapist recommended no further visits with the girls until the mother consistently attended therapy to better understand the younger daughter's needs. The therapist recommended that the mother and younger daughter could reintroduce contact during therapy appointments and then ultimately transition back into regular visits. The mother attended one appointment but did not return, so the regular visits remained suspended.

The mother also struggled to stay sober. The mother gave birth to a baby boy in July 2023, and the boy's cord blood test was positive for methamphetamine, amphetamine, and cannabinoids. The mother did not consistently attend family services appointments or enroll in treatment. In January 2024, the mother was arrested for possessing marijuana and methamphetamine, and she spent over a month in jail. After her release in February, the mother showed willingness to remain sober and engage with services, as she was now pregnant with her fifth child. And she indeed began participating in a substance-abuse treatment

program in February.  But then she backslid, infrequently attending appointments and ignoring two in-patient programs who contacted her with availability.  In July, she tested positive for methamphetamine—two months after giving birth to another son.

The State petitioned to terminate her rights to the daughters and the juvenile court held a hearing in August.  The mother attended the hearing but did not testify or offer any evidence.  The mother was represented by counsel and the attorney briefly cross-examined the two HHS workers who testified, though the questions exclusively focused on the newborn son.[2]  And at the close of evidence, the mother's attorney took "no formal position" on terminating her parental rights to the girls and instead asked the juvenile court to make "the appropriate decision that the court feels is in the children's best interest."

The juvenile court terminated the mother's parental rights to the daughters under Iowa Code section 232.116(1)(f).  The court found the girls were both over four years old, had been removed from the mother's custody since March 2023, were adjudicated in need of assistance, and could not be returned to the mother's custody.  The juvenile court also found terminating the mother's parental rights best served the girls, as the daughters had been removed for over a year, both girls wished to remain with their grandmother, and the grandmother could provide the permanency and support they need.

The mother now appeals.

---

[2] At the same hearing, the district court also considered whether to adjudicate the newborn son in need of assistance.  The mother does not appeal that adjudication.

II.

Our three-step termination framework is well-established. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). When a parent does not challenge one or more of those steps, we need not consider them. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Here, the mother only disputes the first step—whether the State proved a statutory ground for termination by clear and convincing evidence. *See L.B.*, 970 N.W.2d at 313. And while we consider this issue de novo, we will give weight to the juvenile court's factfinding and credibility determinations as appropriate. *Id.*

To begin, we acknowledge the anomaly of the mother declining to take a position on whether the district court should terminate her rights, yet on appeal asserting an unequivocal position against termination. The State argues the mother's inaction during the termination hearing forecloses appellate review, as she did not offer any evidence, declined to testify, and vocalized "no formal position" on termination. And we agree it is questionable whether the mother can make an about-face on appeal to challenge the grounds for termination after her seeming assent to whatever the court felt was best for the children during the hearing. *Compare In re M.F.*, No. 18-0289, 2018 WL 3057772, at *1 & n.2 (Iowa Ct. App. June 20, 2018) (holding that the parent waived or did not preserve error by only cross-examining the State's witness and not introducing her own evidence or objecting to the any of the State's exhibits), *with In re A.R.*, 316 N.W.2d 887, 888–89 (Iowa 1982) (holding parent may challenge sufficiency of the evidence for statutory ground of termination on appeal when issue was not raised in the district court). Still, we elect to affirm on the merits.

The mother's parental rights were terminated under section 232.116(1)(f), and she does not dispute the first three prongs of paragraph "f"—the children were over four years old, were adjudicated in need of assistance, and had been removed from her custody for over twelve straight months. *See* Iowa Code § 232.116(1)(f)(1)–(3). So we focus on the last prong—whether the children could have been returned to her custody at the time of the termination hearing. *Id.* § 232.116(1)(f)(4).

The mother argues that ongoing substance use alone is not enough to terminate her parental rights. She argues that without a "nexus" between her substance use and "appreciable adjudicatory risk of harm to the child," the children should be returned to her custody. *See In re M.S.*, 889 N.W.2d 675, 682 (Iowa Ct. App. 2016). The mother's reliance on *M.S.* is misplaced. There, a father was working to achieve sobriety from cannabis but continued using "for at least some period of time while the" juvenile case was pending. *Id.* at 678. Yet the father never interacted with the child while under the influence, the department had no concerns the father might supervise the child while impaired, and the department ultimately had "no concerns regarding the safety of the child while in" the father's care. *Id.* The father also attended every visitation with the child and each visit went well. *Id.* at 677–78.

Here, conversely, the mother has not shown she is working toward sobriety. The mother was expected to attend substance-use treatment twice a week until an in-patient program had an opening. But she did not attend most of those appointments. When two in-patient programs had openings the month before the termination hearing, the mother did not respond or request placement. During this

time, the mother tested positive for methamphetamine. The mother chose not to testify at the hearing and she offered no evidence showing she has since reengaged with treatment. So unlike the recovering father in *M.S.*, we have no basis to find the mother's substance use will improve in the near future.

And contrary to the mother's assertions, her conduct has harmed the girls. As the HHS worker explained, the younger daughter "has especially suffered from her mother's substance use and neglect over the years." Because of her upbringing, the younger daughter has mental health needs that require consistent care and support—and her behaviors intensify after visits with the mother. So unlike the speculative harms rejected in *M.S.*, the State showed the mother's neglect and substance use has harmed her daughters. *See id.* at 678.

We are also mindful of the initial reason the girls were removed from the mother's custody. Since removal, the mother has not shown she has worked to assure the girls would be safe and secure under her watch. In fact, an HHS worker reported the mother and children were "possibly in a worse position than in the initiation of the [child-in-need-of-assistance] proceedings." Termination under paragraph "f" asks whether the girls could be immediately returned to their mother's custody, not whether they could someday be returned. *See In re A.M.,* 843 N.W.2d 100, 111 (Iowa 2014). On our review, we agree with the juvenile court that the daughters could not be safely returned to their mother's custody at the time of the termination hearing. Thus, we affirm termination under section 232.116(1)(f). Because the mother does not challenge any other step of our statutory framework, we affirm the juvenile court's termination order.

**AFFIRMED.**